# Exhibit A

## State Court - Complaint and Jury Demand

| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br><br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: May 20, 2021 2:03 PM<br>FILING ID: 388849DB9DF0C<br>CASE NUMBER: 2021CV31598 |
|---|---|
| **Plaintiff:**<br><br>RE/MAX, LLC, a Delaware limited liability company,<br><br>v.<br><br>**Defendant:**<br><br>eXp Realty, LLC, a Washington limited liability company. | ▲ **COURT USE ONLY** ▲ |
| | Case No. _____<br><br>Division/Courtroom: _____ |
| *Attorneys for Plaintiff RE/MAX, LLC:*<br>Name:      Kathryn A. Reilly (#37331)<br>               Thomas A. Olsen (#43709)<br>               Melissa L. Romero (#47778)<br>               Wheeler Trigg O'Donnell LLP<br>Address:   370 Seventeenth Street, Suite 4500<br>               Denver, CO  80202-5647<br>Telephone:  303.244.1800<br>Facsimile:   303.244.1879<br>Email:      reilly@wtotrial.com<br>               olsen@wtotrial.com<br>               romero@wtotrial.com | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff RE/MAX, LLC ("RML") files this Complaint against eXp Realty, LLC ("eXp") seeking an injunction and damages as follows:

## NATURE OF THE ACTION

1.     This action is for tortious interference arising out of and in connection with eXp's repeated interference with RML's existing contracts.

2.     Specifically, RML operates a national franchise real estate business through which it enters into franchise agreements that grant franchisees the right to own and operate

RE/MAX® real estate franchises and require them to operate their franchises for specified terms. eXp has engaged in a pattern of inducing RML's franchisees nationwide to breach their franchise agreements and affiliate with eXp's cloud-based real estate brokerage. In recent weeks, eXp's efforts have intensified, with eXp successfully interfering with a number of RML's franchise agreements, resulting in the franchisees abandoning their RML franchise, in violation of their franchise agreements, to operate under eXp's brokerage. eXp's interference is intentional, improper, ongoing, and directed at harming RML's franchise system.

3.      eXp also unfairly and deceptively attacked RML online by publishing false and disparaging representations of fact about RML's compensation scheme and financial incentives, which exacerbated eXp's improper interference and the resulting harm.

4.      As a result of eXp's conduct, RML has suffered economic harm, including in the form of lost franchises and revenue.

5.      In addition, as a result of eXp's conduct, RML has suffered and will continue to suffer substantial, irreparable harm. eXp's ongoing interference is depriving RML of business opportunities, diverting franchises, and diminishing RML's competitive position in the marketplace. RML is also suffering and will continue to suffer reputational harm, decreased enterprise value, and a loss of the substantial business goodwill that it has built over the course of four decades.

6.      To address this ongoing, irreparable harm, RML is seeking not only economic damages for past harms, but also injunctive relief barring eXp from further conversion of RML's franchises.

## PARTIES

7.      RML is a Delaware limited liability company whose principal place of business is located at 5075 S. Syracuse Street, Denver, CO 80237.

8.      Upon information and belief, eXp is a Washington limited liability company whose principal place of business is located at 2219 Rimland Dr., Ste 301, Bellingham, WA 98226.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to Colo. Rev. Stat. § 13-1-124 because this action arises from the commission of a tortious act within the state. eXp has engaged in a multijurisdictional course of intentional and improper contractual interference aimed at a Colorado-based company, with knowledge that RML's injury would be felt here. eXp has minimum contacts in Colorado, purposefully availed itself of conducting real estate business throughout the state, purposefully directed and aimed its interference at a Colorado-based business; and this litigation arises out of and relates to eXp's Colorado-based and Colorado-directed activities.

10.     Venue is proper in this judicial district pursuant to Colorado Rule of Civil Procedure 98(c) because eXp is a nonresident defendant.

## FACTUAL ALLEGATIONS

### A.     The RML Franchise and Franchise Agreements

11.     Founded in Denver in 1973, RML is a leading global franchisor of real estate brokerage services, with over 135,000 agents and a presence in more than 110 countries and territories. RML is principally based in Colorado, but its independently owned and operated franchisees have offices throughout the United States. Those franchisees benefit from RML's Colorado-based brand, the goodwill associated with the brand, the strength of RML's franchised network, and its reputation as a highly productive real estate network.  RML has held the number one market share position in the U.S. and Canada combined since 1999 as measured by total residential transaction sales completed by its agents.

12.     As part of its franchise system, RML enters into binding franchise agreements with franchisees, granting them the right to own and operate RE/MAX® real estate franchises for specified terms.

13.     The franchise agreements are not at-will contracts and contain specific provisions governing termination. The franchise agreements provide specific beginning and end dates, requiring the franchisee to perform under the franchise agreement and promote and enhance the RML brand throughout the term of the franchise agreement. The RML franchise agreements do not allow franchisees to voluntarily abandon, surrender, or transfer control of their franchises; such conduct constitutes a breach of the franchise agreements.

14.     RML franchise agreements contain Colorado forum-selection and choice of law provisions.

15.     RML franchisees generally are real estate brokers who own and manage real estate brokerages.  The brokers generally contract with real estate sales associates who sell real estate and are compensated according to contracts with their brokers.

16.     RML franchisees pay RML contractual fees and dues in Colorado.  RML uses these fees and dues to provide industry-leading benefits to the sales associates, including by supporting RML's brand, its technology offerings, the RE/MAX® University training program, and the RML Approved Supplier Program—all of which are developed and based in Colorado.

### B.     eXp's History of Inducing RML's Franchisees to Breach Their RML Franchise Agreements

17.     eXp is a cloud-based real estate brokerage company that operates nationwide and conducts real estate business throughout Colorado.

3

18.     eXp is a single brokerage that operates and generates revenue through agents who act on eXp's behalf and earn commission-based compensation. eXp describes itself as "a global family of agents and partners."

19.     eXp encourages and incentivizes its agents to solicit new agents to join eXp from other real estate brokerages and companies, including RE/MAX franchisees. eXp provides multiple financial incentives for its agents to "sponsor" new agents and convince them to join eXp. eXp uses a multilevel marketing strategy, whereby the more new agents an eXp agent recruits into the eXp system, the greater the financial reward.

20.     Further, on information and belief, eXp has induced RML franchisees it is recruiting, in violation of the franchisees' agreements with RML, to convert their franchise businesses—including many or most of the franchisee's sales associates—to eXp before the RML franchisee purports to abandon its franchise agreement. To take one recent example, at least seven sales associates of the RML McWernli Franchisees (discussed below) changed their affiliation to eXp before the McWernli Franchisees purported to abandon their RML franchises and join eXp. The net result of this conduct is that RML is left with stripped franchises while eXp proceeds with fully-staffed brokerages on day one after the RML franchisees wrongfully abandon their franchise agreements. And eXp financially incentivizes and rewards the RML franchisee for those sales associates that affiliate with eXp.

21.     eXp specifically targets franchise owners to abandon their franchises and join the eXp real estate brokerage. eXp has developed and used for solicitation of RML franchisees numerous materials, resources, websites, and other advertisements touting "advantages" to the eXp.

22.     For several years, eXp has attempted to induce RML franchisees during the term of their franchise agreements with RML to abandon their RML franchises, in breach of their RML franchise agreements, and join the eXp brokerage. Until recently, on information and belief, those efforts have largely been unsuccessful.

23.     For example, eXp has improperly solicited RML franchisees in the following instances, among others:

   a)  In October 2018, eXp emailed RE/MAX affiliates in the entire Michigan region, including RE/MAX franchisees, announcing that a Michigan RE/MAX agent moved his business to eXp, and encouraging RE/MAX franchisees to learn more through a "Lunch and Learn" presentation.

   b)  In January 2019, eXp improperly solicited two RML franchisees—one in Texas and one in Missouri—encouraging them to join eXp.

   c)  In October 2019, eXp improperly solicited a RML franchisee in Nevada, offering to provide her more information about eXp as a possible "change in scenery" and "next step in [her] career."

4

d)  In May 2020, eXp improperly solicited a RE/MAX franchisee in Michigan who owned seven RE/MAX franchises.

e)  Also in June 2020, eXp improperly solicited a RML franchisee who owned three franchises in California, causing him to abandon and breach all three franchise agreements and join eXp.

f)  In July 2020, eXp improperly solicited RML franchisees in California encouraging them to join eXp.

g)  In December 2020, eXp emailed a RML franchisee in Pennsylvania encouraging him to join eXp.

24.    As early as 2019, eXp was aware RML's franchisees had franchise agreements with RML specifying the terms of the franchises, but eXp has continued to improperly solicit, recruit, and induce the franchisees nonetheless.

25.    Throughout the years, RML has communicated to eXp numerous times from its Colorado offices that its conduct is improper, that the RML franchisees had ongoing contractual obligations to RML through ongoing franchise agreements, and insisted that eXp immediately refrain from further solicitation and interference.

**C.    eXp's Recent Intentional and Improper Interference with RML Franchise Agreements**

26.    Instead of ceasing further solicitation and interference, eXp recently has intensified its solicitation and interference efforts, causing several RML franchisees to abandon their franchises, in breach of their franchise agreements, and join eXp.

27.    In or around late 2020 or early 2021, eXp improperly induced a RML franchisee in South Carolina to abandon his franchise, in breach of his franchise agreement, and join eXp.

28.    In March 2021, RML learned that eXp had recruited 23 sales associates of a RML franchisee in California and that the franchisee may be leaving the RML franchise in breach of its franchise agreements.

a.    eXp's Intentional and Improper Interference With the McWernli Franchise Agreements

29.    Also in March 2021, RML learned that eXp was improperly attempting to induce several RML franchisees in New Jersey—McWernli Properties, Inc. ("McWernli"), and its owners Christopher Walsh and Christian Giamanco (together, the "McWernli Franchisees")—to abandon their RML franchises and join eXp.

30.     RML and McWernli are parties to two franchise agreements—one grants McWernli the right to own and operate a franchised real estate office in Middletown, New Jersey and the other grants McWernli the right to own and operate a franchised real estate office in Holmdel, New Jersey. ("Middletown Franchise Agreement" and "Holmdel Franchise Agreement," respectively; together, the "McWernli Franchise Agreements" or "Agreements").

31.     Mr. Walsh and Mr. Giamanco executed a Guaranty and Assumption of Obligations for the McWernli Franchise Agreements and are individually bound to the Agreements thereby (the "Guaranty and Assumption").

32.     Mr. Walsh became a party to the Middletown Franchise Agreement in 2008. Mr. Giamanco joined the Middletown Franchise Agreement five years later in 2013.  In 2018, Mr. Walsh and Mr. Giamanco transferred their interest in the Middletown Franchise Agreement to McWernli Properties, Inc., in which each owns a 50% interest. Since 2008, the McWernli Franchise Agreement has been renewed on three occasions, most recently on December 22, 2018.

33.     The Middletown Franchise Agreement has a five-year term with an Agreement Date of December 22, 2018, and provides:  "The term of the Franchise will begin on the Agreement Date and continue through December 21, 2023 (the 'Term'), unless the Franchise is terminated earlier pursuant to the provisions of this Agreement."

34.     Mr. Walsh originally signed the Holmdel Franchise Agreement in 2015. A year later, in 2016, Mr. Giamanco joined the Holmdel Franchise Agreement. In 2020, Mr. Walsh and Mr. Giamanco transferred their interest in the Holmdel Franchise Agreement to McWernli Properties, Inc., in which each owns a 50% interest. The Holmdel Franchise Agreement was renewed once, on April 1, 2020.

35.     The Holmdel Franchise Agreement has a five-year term, and provides: "The term of the Franchise will begin on the Agreement Date and continue through March 31, 2025 (the 'Term'), unless the Franchise is terminated earlier pursuant to the provisions of this Agreement."

36.     The McWernli Franchise Agreements provide, among other things:

a.     "You specifically agree to operate the Office in accordance with the provisions of this Agreement, perform the obligations of this Agreement, and continuously exert your best efforts to promote and enhance the business of the Office for the Term."

b.     "You further agree that you will operate the Office continuously during the Term, and that you will not voluntarily abandon, surrender, transfer control of or lose the right to occupy the Premises—or fail to actively operate the Office—for a period in excess of 5 consecutive business days, unless your failure to do so is caused by fire, flood, earthquake or other similar cause beyond your reasonable control, as more fully set forth in Subsection 15.Z."

6

c.      "You will be in material default of an essential condition of this Agreement and we [RML] have the right to terminate this Agreement effective upon delivery of notice of termination to you and without providing an opportunity to cure, if: . . .

(4) you voluntarily abandon, surrender, transfer control of, or lose the right to occupy the Premises, or fail to actively operate the Office, for a period in excess of 5 consecutive business days, unless your failure to do so is caused by fire, flood, earthquake or other similar cause beyond your reasonable control . . . ."

37.     When RML learned of eXp's improper inducement of the McWernli Franchisees, RML sent eXp a letter noting that the McWernli Franchisees were contractually bound to their Agreements; insisting that eXp immediately refrain from further inducements of the McWernli Franchisees; and reminding eXp of its history and pattern of attempting to induce RML franchisees to violate their franchise agreements.

38.     Thus, eXp was aware of the binding Agreements between RML and the McWernli Franchisees.

39.     eXp did not thereafter stop inducing the McWernli Franchisees to abandon their franchises, in breach of the McWernli Franchise Agreements.

40.     On April 8, 2021, eXp sent RML a response letter in Colorado denying RML's allegations in conclusory fashion.

41.     On April 12, 2021, RML sent another letter to eXp again emphasizing that the McWernli Franchisees had "multiple binding RE/MAX franchise agreements that extend for many more years."

42.     eXp did not thereafter stop inducing the McWernli Franchisees to abandon their franchises, in breach of the McWernli Franchise Agreements.

43.     On April 19, 2021, the McWernli Franchisees sent RML a letter containing a purported formal notice of abandonment of the Middletown and Holmdel franchises and McWernli Franchise Agreements, effective immediately.

44.     The McWernli Franchisees are no longer operating the Middletown and Holmdel franchises as required by the McWernli Franchise Agreements.

45.     The McWernli Franchise Agreements do not authorize the McWernli Franchisees to abandon the Agreements prior to the expiration of their respective terms. To the contrary, the Agreements specify that the abandonment constitutes a material breach of those Agreements.

7

46.     RML has rejected the McWernli Franchisees' purported formal notice of abandonment on the grounds the Franchise Agreements do not allow them to abandon the franchises. A declaratory judgment action on this issue is pending in the District Court for the City and County of Denver, Case No. 21CV31368.

47.     After abandoning and breaching their Franchise Agreements, Mr. Walsh and Mr. Giamanco joined eXp and now operate as agents of eXp's real estate brokerage.

48.     In addition, the McWernli Franchise Agreements require the McWernli Franchisees to "continually exert [their] best efforts to promote and enhance the business of the Office for the Term." However, on information and belief, eXp induced the McWernli Franchisees during the Term to undercut their franchises, including by moving the McWernli Franchisees' sales associates over to eXp. This conduct constitutes an additional material breach of the McWernli Franchise Agreements.

49.     Had eXp not improperly induced the McWernli Franchisees, they would not have abandoned their franchises in violation of their obligations under the McWernli Franchise Agreements.

        b.     <u>eXp's Intentional and Improper Interference with the KFM Franchise Agreements</u>

50.     In May 2021, RML learned that eXp had contacted and improperly induced another group of RML franchisees in New Jersey—KFM, LLC and Allison and Gene Krutyansky ("the KFM Franchisees")—to abandon their RML franchises.

51.     RML and KFM, LLC are parties to franchise agreements granting the KFM Franchisees the right to own and operate a franchised real estate office in North Brunswick and Monroe Township, New Jersey (the "North Brunswick Franchise Agreement" and "Monroe Franchise Agreement," and, together, the "KFM Franchise Agreements" or "Agreements").

52.     The Krutyanskys executed a Guaranty and Assumption of Obligations for the KFM Franchise Agreements and are individually bound to the Agreements thereby (the "Guaranty and Assumption").

53.     Mr. Krutyansky became a party to the North Brunswick Franchise Agreement on June 26, 2009.  Thereafter, Mr. Krutyansky renewed the North Brunswick Franchise Agreement on three separate occasions, most recently on December 23, 2016, when he renewed under KFM, LLC, in which Mr. Krutyansky and Ms. Krutyansky each own a 50% interest.

54.     The North Brunswick Franchise Agreement is for a five-year term, and provides: "The term of the Franchise will begin on the Agreement Date and continue through <u>December 22, 2021</u> (the 'Term'), unless the Franchise is terminated earlier pursuant to the provisions of this Agreement."

55.     Mr. Krutyansky became a party to the Monroe Franchise Agreement on June 26, 2006. Most recently, on March 26, 2017, Mr. Krutyansky renewed the Monroe Franchise Agreement under KFM, LLC, in which he and Ms. Krutyansky each own a 50% interest.

56.     The Monroe Franchise Agreement has a five-year term, and provides: "The term of the Franchise will begin on the Agreement Date and continue through March 25, 2022 (the 'Term'), unless the Franchise is terminated earlier pursuant to the provisions of this Agreement."

57.     The KFM Franchise Agreements contain identical provisions as the McWernli Franchise Agreements, quoted in paragraph 36, above, prohibiting the KFM Franchisees from abandoning the franchises before the specified terms of the Agreements expired.

58.     Based on RML's multiple letters to eXp over the years stating that multiple RE/MAX franchisees had binding franchise agreements with specified terms, eXp was aware of the binding Agreements between RML and the KFM Franchisees.

59.     Nonetheless, eXp improperly induced the KFM Franchisees to abandon their franchises and join eXp, and, in further violation of their obligations under the KFM Franchise Agreements, to move their sales associates over to eXp.

60.     On May 3, 2021, the KFM Franchisees sent RML a letter containing a purported formal notice of abandonment of the KFM Franchise Agreements, effective immediately.

61.     The KFM Franchisees are no longer operating under the KFM Franchise Agreements.

62.     The KFM Franchise Agreements do not authorize the KFM Franchisees to abandon the Agreements prior to the expiration of their respective terms. To the contrary, the Agreements specify that the abandonment constitutes a material breach of the KFM Franchise Agreements.

63.     RML has rejected the KFM Franchisees' purported formal notice of abandonment on the grounds the Franchise Agreements do not allow them to abandon the franchises. A declaratory judgment action on this issue is pending in the District Court for the City and County of Denver, Case No. 21CV31429.

64.     After abandoning and breaching the KFM Franchise Agreements, Allison and Gene Krutyansky joined eXp and now operate as agents of eXp's real estate brokerage.

65.     In addition, the KFM Franchise Agreements require the KFM Franchisees to "continually exert [their] best efforts to promote and enhance the business of the Office for the Term." However, eXp colluded with the KFM Franchisees during the Term to move the KFM Franchisees' sales associates over to eXp. This conduct constitutes a material breach of the KFM Franchise Agreements.

66.     Had eXp not improperly induced the KFM Franchisees, they would not have abandoned their franchises in violation of their obligations under the KFM Franchise Agreements.

        c.     <u>eXp's Current and Ongoing Improper Interference with Texas and Florida Franchisees</u>

67.     On May 3, 2021, eXp contacted and improperly solicited a RML franchisee in Texas, attempting to induce him to join eXp.

68.     On May 5, 2021, RML sent eXp a letter noting that the Texas franchisee was contractually bound to his franchise agreement; insisting that eXp immediately refrain from further solicitations of him; and reminding eXp of its history and pattern of attempting to induce RML franchisees to violate their franchise agreements. On May 13, 2021, eXp sent RML a response letter in Colorado denying RML's allegations in conclusory fashion.

69.     On information and belief, eXp has not ceased its efforts and, if not enjoined, will cause the Texas franchisee to abandon his franchise, in breach of his RML franchise agreement, and join eXp.

70.     On or around April 15, 2021, eXp improperly solicited a RML franchisee who owns three RML franchises in Florida, with two franchise terms running through December 2021, and the third franchise term running through June 2024. eXp's improper inducement included hosting a presentation at one of the franchisee's offices, titled "What to EXPect."

71.     On May 7, 2021, RML sent eXp a letter noting that the Florida franchisee contractually bound to his franchise agreement; insisting that eXp immediately refrain from further inducements; and reminding eXp of its history and pattern of attempting to induce RML franchisees to violate their franchise agreements. On May 17, 2021, eXp sent RML a response letter in Colorado denying RML's allegations in conclusory fashion.

72.     On information and belief, eXp has not ceased its inducement efforts and, if not enjoined, will cause the Florida franchisee to abandon and breach his RML franchise agreements and join eXp, just as the McWernli Franchisees and KFM Franchisees already have.

73.     eXp's past and ongoing interference with RML's franchise agreements make clear that eXp is engaged in an ongoing, nationwide effort to interfere with RML's franchise agreements and induce RML franchisees to breach those agreements and join eXp.

**D.     eXp Publishes False and Misleading Information about RML**

74.     In further interference with RML's franchise relationships, eXp has published false and misleading information on a public website about RML—specifically its compensation model.

75.     eXp uses comparative advertising to market its real estate system. For example, eXp publicly compares its compensation splits, caps, stock options, and revenue shares with other real estate companies, including RML, Century 21, Keller Williams Realty, and Weichert Realtors, as shown by the below screenshot from the website expscoop.com:

## Do the math, ask around

### eXp gives agents the best splits, caps, and opportunities

|  | eXp REALTY | RE/MAX | Century 21 | kw KELLER WILLIAMS | Weichert |
|---|---|---|---|---|---|
| Split | 80/20 (100% after cap) | 70/30 (94% after cap) | 50/50 – 60/40 (5-10%+ potential ) | 70/30 (100% after cap) | 50/50 – 60/40 (5-10%+ potential ) |
| Cap | 16K (Earn cap back in stock) | 18-20K (Mandatory) | No cap (Permanent Split) | 24K avg + 3K fee (Mandatory) | No cap (Permanent Split) |
| Stock Options | Earn equity and stock as you close transactions | x | x | x | x |
| Revenue Share | Earn up to $2800 per agent sponsored per year | x | x | x | x |

**Figure 1**

76.     The comparative advertising in Figure 1 has been used to solicit and recruit new agents to eXp, including RML franchisees and RML's franchisees' sales associates.

77.     The description of RML's "Split" in Figure 1 is false and misleading. RML does not require specific sales associate splits but instead allows RML franchisees to set their own splits with their sales associates. As set forth in RML's franchise agreements, RML recommends, but does not require, that its franchisees use a 95/5 split model.

78.     The description of RML's "Cap" in Figure 1 is also false and misleading. Because of its high, 95/5 commission split, RML does not require or encourage a specific cap, but instead allows RML franchisees to set their own cap, if they choose, with their sales associates.

79.     Through this deceptive comparative advertising, eXp mischaracterized RML's franchise practices, compensation scheme, and financial incentives to steer RML's existing and potential franchisees and their sales associates away from RML to eXp.

80.     RML alerted eXp to the false representations on expscoop.com, and the site has since been taken down. This is yet another example of eXp's intentional, improper interference with RML's existing and prospective contractual relationships.

**E.     eXp's Conduct is Irreparably Harming RML**

81.     eXp's conduct has diverted business opportunities and long-standing RML franchises away from RML's franchise system.

82.     RML's brand and franchise system was built and continues to thrive in a highly competitive industry based on the business goodwill it has developed over four decades through its franchise system and dedication to service-needs of its consumers, franchisees, and their sales associates.

83.     RML has already lost, and will continue to daily lose, business opportunities, revenue, and franchisees and suffer harm to its reputation and business goodwill, if eXp is not barred from continuing to interfere with RML's franchise agreements.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### (Tortious Interference with Existing Contracts)

84.     RML incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

85.     RML and McWernli are parties to valid Franchise Agreements. The Franchise Agreements between RML and McWernli are also binding on Messrs. Walsh and Giamanco pursuant to the Guaranty and Assumption.

86.     RML and KFM, LLC are parties to valid Franchise Agreements. The Franchise Agreements between RML and KFM, LLC are also binding on Gene and Allison Krutyansky pursuant to the Guaranty and Assumption.

87.     Based on eXp's repeated, malicious, and intentional pattern of interference with RML's franchise agreements since 2018, eXp's specific inducement of the McWernli and KFM Franchisees, and eXp and RML's repeated correspondence on these issues, including specifically with respect to the McWernli Franchisees, eXp had knowledge of or reasonably should have had knowledge of the McWernli and KFM Franchise Agreements.

88.     Notwithstanding that knowledge, eXp, by words and conduct, intentionally caused the McWernli and KFM Franchisees to violate their contracts with RML and join eXp's real estate system, together with certain of their sales associates.

89.     Based on the foregoing allegations, eXp's interference with the McWernli and KFM Franchise Agreements was improper.

90.     As a result of eXp's intentional and improper conduct, the McWernli and KFM Franchisees provided RML with formal notices of abandonment, breached their contracts, and began operating their businesses under eXp's real estate brokerage.

91.     In addition to its intentional and improper actions with respect to the McWernli and KFM Franchisees, eXp continues to engage in intentional and improper conduct targeting existing RML franchisees throughout the country, including the RML franchisees in Texas and

Florida discussed in paragraphs 67-72, above. eXp also continues inducing RML franchisees to abandon their RML franchises in violation of their franchise agreements, and transfer their businesses, including their sales associates, to eXp.

92.     The intentional and improper nature of eXp's interference with RML's contracts is further demonstrated by eXp's false and misleading statements on expscoop.com regarding RML's franchise practices, compensation scheme, and financial incentives.

93.     As a result of eXp's intentional and improper interference, RML has suffered and will continue to suffer irreparable harm, including to its business reputation and goodwill.

94.     As a result of eXp's intentional and improper interference, RML has suffered and will continue to suffer irreparable damages, including in the form of lost franchise fees and also in other forms that will be proven at trial.

95.     As a result of eXp's intentional and improper interference, RML is entitled to all damages allowable by law, including but not limited to actual and consequential damages, costs (including reasonable attorney fees), equitable relief, and for such further relief the Court finds proper and necessary.

## RESERVATION OF RIGHTS

RML expressly reserves all rights to plead exemplary damages in accordance with C.R.S. § 13-21.102.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RML prays that the Court grant the following relief:

1.     Equitable relief in the form of a preliminary and permanent injunction, prohibiting eXp and its agents from contacting by email, mail, telephone call, personal visit, social media, or otherwise any franchisee of RML for the purpose of soliciting, inducing, or persuading any such franchisee to abandon its franchise agreement with RML before the specified term expires.

2.     Award RML all damages allowable by law and statute incurred as a result of eXp's conduct, including the recovery of actual, compensatory, and consequential damages.

3.     Award RML its allowable costs, disbursements and penalties in this action as the Court deems proper.

4.     Award RML reasonable attorneys' fees to the extent such may be allowable by law.

5.     Award RML pre- and post-judgment interest.

6.      Award RML all further relief in law or in equity, including, but not limited to, disgorgement of eXp's ill-gotten profits, to which it may show it is justly entitled.

## DEMAND FOR JURY TRIAL

RML demands a trial by jury on all claims so triable.

Dated:  May 20, 2021                    Respectfully submitted,


                                        *s/ Kathryn A. Reilly*
                                        Kathryn A. Reilly
                                        Thomas A. Olsen
                                        Melissa L. Romero
                                        Wheeler Trigg O'Donnell LLP

                                        *Attorneys for Plaintiff RE/MAX, LLC*

Plaintiff:
RE/MAX, LLC
5075 S. Syracuse Street
Denver, CO 80237